BOWES, Judge.
David Michael was charged by a bill of information in the 24th Judicial District Court with two counts of possession of cocaine, violations of R.S. 40:967. The record reveals that originally there were at least three bills of information filed charging various combinations of the defendants involved in this case with narcotics offenses. These bills were ordered transferred to one division of court and were consolidated for trial. Since they involved a single fact situation, the District Attorney filed a single all embracive bill of informa *848 tion joining the matters as counts. This bill of information was numbered as 82-3822 and it is this bill and the accompanying record that has been lodged on appeal. As noted previously, the appellant is only charged in counts 1 and 2 of the combined bill.
The record does not specifically show that Michael was arraigned on either count. This, however, is of no importance since failure to conduct an arraignment does not constitute error patent. La.C.Cr.P. art. 555 provides:
Any irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.
On January 20, 1983, the trial judge consolidated for hearing the Motion for Disclosure of Name and Address of Confidential Informant, and the Motion to Suppress. At the conclusion of the evidence on January 21, 1983, the judge denied the disclosure motion and took the Motion to Suppress under advisement. On January 24, 1983, Michael returned to court and entered a plea of guilty to count one of the information. During the plea colloquy, the judge denied the Motion to Suppress previously taken under advisement.
Although a sentence of ten (10) years at hard labor and a fine of $10,000.00 had been agreed to by the defendant as a condition of the plea bargain, imposition of the sentence was deferred until May 13, 1983. On that date the trial judge committed Michael to the custody of the Department of Corrections for a term of only six years at hard labor. A fine of $10,000.00 and court costs were to be paid within six months of Michael’s release from prison. Following the imposition of sentence, Michael moved for an appeal and his motion was granted.
FACTS
On the morning of July 20, 1982, Agent Devlin of the Jefferson Parish Sheriffs office, Narcotics Division, met with a confidential informant (C.I.), referred to during the suppression hearing as “Robert”, “Bobby”, or “Bobby Benedict”. The informant advised Devlin that he knew a man by the name of David who was interested in selling about five ounces of cocaine. Devlin instructed the C.I. to set up a buy. Later that day the C.I. again contacted Devlin and told him that “David” was in the parking lot of Bennigan’s Restaurant. Devlin agreed to meet the C.I. there, so that the C.I. could arrange an introduction. Devlin arrived at the parking lot at about 2:10 p.m., surreptitiously accompanied by several other agents. Devlin met with the C.I. and together they walked to the location where David’s automobile was parked. The C.I. introduced the two and then left the area. Agent Devlin made a request to see the cocaine he was to purchase and the man known as “David” removed a clear plastic bag containing a white powder from a paper bag on the front seat of his car. Devlin indicated that he had to return to his car to get the money to complete the transaction, and he moved away, gave a pre-arranged signal to the waiting agents who moved in and arrested “David” for possession of cocaine. “David” was subsequently identified as David Michael.
The agents then requested the defendant to give consent for the search of his room at the Landmark Hotel. Although the agents testified that the defendant was cooperative, the consent forms were not completed at the arrest location. Ostensibly because a thunderstorm moved into the area, the agents returned to the Narcotics Bureau a short distance away to finish the paperwork. At approximately 3:15 p.m., the consent forms were signed. By 3:45 p.m. the agents arrived at the Landmark Hotel, accompanied by the defendant. After ascertaining that Michael was the sole registered occupant of the room, the agents entered, using his key. Two persons were within, watching television. *849 They were frisked for weapons and immobilized during the search proceedings.
Approximately five ounces of cocaine were found on the dresser. Within an open briefcase on the table, an additional quantity of cocaine was discovered. Since it was ascertained that the briefcase belonged to Michael’s guests, they were also arrested and charged as co-defendants. Later, a search of their motel room uncovered more cocaine.
DISCUSSION
The defense filed four assignments of error in the trial record:
1. The trial court committed reversible error in denying the Defendant’s Motion to Suppress.
2. The trial court committed reversible error in denying Defendant’s Motion to Disclose the Name and Address of the Confidential Informer.
3. The trial court committed reversible error in denying Defendant’s Motion for an In Camera Examination of the Confidential Informer.
4. The trial court committed reversible error in imposing a cruel, unusual, and excessive sentence.
One additional assignment was alleged in the supplemental record lodged in this court on December 13, 1983:
The trial court committed reversible error in accepting defendant’s plea of guilty, which plea was not freely and voluntarily made.
We find the defendant has waived review of assignments of errors 1, 2, 3 and 5. Nevertheless, we have reviewed these assignments and find that they contain no merit.
The following is excerpted from the plea colloquy of the appellant on January 24, 1983:
THE COURT:
I guess I should have ruled on the Motion to Suppress. I’m going to deny the Motion to Suppress. Let the record reflect that.
Do any of the defendants intend to take any appeals from that ruling, Mr. Barnett?
MR. BARNETT:
Not on behalf of Mr. Coll, Your Honor. THE COURT:
How about Mr. Escher? [counsel for defendant, David Michael]
MR. ESCHER:
Yes, I’d like to take an appeal on the Motion to Suppress and also the motion to disclose the confidential informer. You are denying that. Do you want me to approach the Bench, Your Honor?
THE COURT:
Yes.
(Let the record reflect that Mr. Escher approaches the Bench.)
THE COURT:
Hard labor means the state penitentiary, whether they accept them at a satellite or any other form of the Department of Corrections doesn’t matter. I just want to make sure the defendants understand what hard labor is.
Let me hear again, Mr. Escher—
MR. ESCHER:
Your Honor, at this time we do not wish to reserve any assignments of error on my motion rulings, [emphasis ours]
THE COURT:
How about you, Mr. Mancuso?
No. Your Honor, we do not plan to pursue any appeal in this matter.
THE COURT:

Did the defendants understand that there will be no appeals taken on the Motion to Suppress?

(Let the record reflect that all three defendants answered in the affirmative) [emphasis ours]
[...]
THE COURT:
In the event of a conviction, you would have a right to appeal at all stages of the proceedings. Included in the appeal, you would have a right to have *850 an attorney represent you during the trial stages of these proceedings.
By entering this plea of guilty, you are now waiving and giving up these rights to have an attorney represent you during the appeal stages of these proceedings. Do you understand that?
(Let the record reflect that all three defendants answered in the affirmative.)
THE COURT:
You would have the right to have an attorney represent you on appeal. Okay, the only thing left to appeal after this is for the jurisdiction of the Court and the sentence the court may impose. Do you understand that?
(Let the record reflect that all three defendants answered in the affirmative.)
From the foregoing colloquy, (and other portions of the record), it is apparent that the astute trial judge was very explicit and extremely careful to make it absolutely clear on the record that neither the defendant, Michael, nor his counsel, George Escher, specifically reserved appellate rights at the time of the plea. Quite to the contrary, the dialogue between the court, the defendant, and defense counsel unmistakably indicates — not once, but three times — that both the defendant and his counsel clearly understood that they specifically waived appellate review of all non-jurisdictional defects prior to Michael’s plea. Further, at item nine of the Defendant’s Acknowledgment of Constitutional Rights and Waiver of Rights on Plea of Guilty form, the defendant indicated “No” to the following question: “Do you intend to appeal any rulings or orders entered by the Court pri- or to your guilty plea?”
Although, within a Motion for Appeal filed on the day of sentencing, the defendant through counsel asserted “that his guilty plea was entered only after the trial court had ruled adversely on several pre-trial motions” and moved to appeal under the authority of State v. Crosby, infra, such request does not preserve the right to appeal those issues, even though an appeal is granted by the trial court.
In State v. Moore, 420 So.2d 1099, 1100 (La.1982), the Louisiana Supreme Court stated: “[i]t is well settled that entry of an unqualified plea of guilty waives all non-jurisdictional defects occurring prior thereto, and precludes review thereof either by appeal, or where appeal is unavailable by supervisory review.” [emphasis added]
In State v. Crosby, 338 So.2d 584 (La.1976), an exception was made to the general rule. The court held:
For the reasons more fully articulated below we have determined that we are not barred from reviewing the assignments of error specifically reserved at the time of the plea of guilty, where the trial court accepted the plea of guilty so conditioned (which the court had discretion to refuse, if proffered upon such reservation), [emphasis added].
Crosby, supra at 588.
The court in Crosby observed that at least three American jurisdictions permitted appellate review of pre-trial rulings refusing to suppress evidence as illegally seized, even upon entry of an unqualified plea of guilty. But it did not adopt that policy. Later cases confirm that the holding of Crosby was to be strictly interpreted. The failure of the defendant to expressly stipulate that he was reserving his right to review at the time he entered a guilty plea would result in a waiver of that right. See State v. Moore, supra; State v. McKinney, 406 So.2d 160 (La.1981).
Consequently, the defendant has no right to appeal assignments one, two, three and five and these are improperly before this court. We feel constrained to add that we question the good faith and integrity of an appeal after one has made a crystal-clear agreement or bargain with the trial judge on the record and then tries to circumvent the terms of that agreement by clever manipulation. We will not honor nor consider this clever, but distasteful, effort.
*851 ASSIGNMENT OF ERROR NUMBER 4
The trial court committed reversible error in imposing a cruel, unusual, and excessive sentence.
Although the jurisprudence permits an appeal of the sentence imposed, despite the entry of a plea of guilty, the Supreme Court held in State v. Bell, 412 So.2d 1335, 1336 (La.1982), that “where a specific sentence has been agreed to as a consequence of a plea bargain, that sentence cannot be appealed as excessive and there is no need for the trial judge to give reasons for the sentence as required by Article 894.1_” This court has recently subscribed to that position in State v. Blaine Meredith, 447 So.2d 1207 (La.App. 5th Cir.1984) and we see no reason to alter our stand. Moreover, we are astounded by the unmitigated brashness of the defendant to ask us to review as excessive a sentence 40% less than the sentence to which he agreed at the time of his plea bargain, and which was approximately 10% of the maximum sentence he could have received prior to plea bargaining. In addition, the record reveals that Michael had a previous conviction for possession of cocaine and could have been “double-billed” by the State.
Therefore, for the reasons stated above, the conviction and sentence of the defendant is affirmed.
AFFIRMED.