MADELEINE M. LANDRIEU, Judge.
|tA petition was filed against D.F. charging him with one count of illegal possession of a handgun by a juvenile, in violation of Louisiana Revised Statute 14:95.8. D.F. filed a motion to suppress evidence. Fol *? lowing a hearing, the court denied the motion. D.F. then entered a Crosby[1] plea to the petition, reserving his right to appeal the denial of the motion to suppress. For the reasons that follow, we affirm the ruling of the juvenile court.

FACTS

N.O.P.D. Officer Troy Pichón was the only witness called to testify during the suppression hearing. He testified that he and his partner were on perimeter patrol of the Bacchus Mardi Gras parade when they were called to the 1700 block of St. Charles Avenue to deliver a summons book to other officers for an incident involving “fighting or something of that nature.” Once at the scene, Officer Pichón observed D.F. and two other individuals walking together in the middle of the street. Officer Pichón made eye contact with D.F. who then split from the other two and walked around a police car instead of walking directly in front of Officer Pi-chon. As D.F. walked around the car, Officer Pichón observed D.F. with his 12hand on the right side of his waistband. D.F. then quickly moved his hand away from his waistband when he noticed that Officer Pichón was watching him.
Officer Pichón testified that, based on his experience with concealed firearm arrests, perpetrators tend to grab their waistbands and that “normal movement tends to dislodge or keep the firearm moving in their waistband[s], so they constantly have to readjust [them] in their waistband[s] to keep [them] from falling....” Officer Pichón further testified that, based on the aforementioned knowledge, D.F.’s movements were consistent with those in prior firearms arrests he had made in the past.
After D.F. walked past the police car, he rejoined the two individuals with whom he had been walking. D.F. then turned his head and noticed that Officer Pichón was still watching him. D.F. whispered to one of his friends, at which point they both turned around and looked at Officer Pi-chon.
Officer Pichón decided to approach the group and observed D.F. to be visibly nervous. As Officer Pichón got closer, he observed a bulge in D.F.’s right waistband and elected to perform a pat-down for a weapon. During the pat-down, Officer Pi-chon felt a hard object on the right side waistband where D.F. had previously held his hand as he was walking around the police car. Officer Pichón testified that the object he felt on the waistband was consistent with a firearm. Officer Pichón advised D.F. of his rights and ordered him to lift his shirt. A handgun was recovered from D.F.’s waistband. D.F. was then arrested and taken to the juvenile bureau for processing.

DISCUSSION

In his sole assignment of error, D.F. contends that the trial court erred in denying the motion to suppress evidence because the arresting officer lacked ^reasonable suspicion and/or probable cause to stop him and conduct a weapons frisk.
Article I, Section 5 of the Louisiana Constitution of 1974 as well as the Fourth Amendment to the United States Constitution protect individuals from unreasonable searches and seizures. State v. Morgan, 2009-2352, p. 4 (La.3/15/11), 59 So.3d 403, 405. Under these provisions, and as a general rule, a search warrant is required to conduct a constitutionally permissible search. Over time, however, the United States Supreme Court has carved out several exceptions to the warrant re *1196 quirement that justify warrantless searches in limited circumstances. Id., 2009-2352, pp. 5-6, 59 So.3d at 406. At a hearing on a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D). A trial court judgment relative to the suppression of evidence is afforded great weight and only set aside for an abuse of discretion. State v. Hunt, 2009-1589, p. 7 (La.12/1/09), 25 So.3d 746, 752.
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions. La.C.Cr.P. art. 215.1(A). Reasonable suspicion to justify an investigatory stop must be based on specific, articulable facts from which an officer can rationally infer that past, present or future criminal activity exists. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).
A police officer does not have to observe what he knows to be criminal behavior before investigating. The requirement is that the officer has a reasonable suspicion of criminal activity based on ar-ticulable facts. State v. Benjamin, 97-[3065,4 p. 3 (La.12/1/98), 722 So.2d 988, 989. Reasonable suspicion justifying an investigatory stop is something less than probable cause and is determined under the facts and circumstances of each case, looking to whether the officer had sufficient facts within his knowledge to justify an infringement of a citizen’s right to be free from governmental interference. State v. Vingle, 2001-0840, p. 4 (La.App. 4 Cir. 11/21/01), 802 So.2d 887, 890. Officers are allowed to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them. United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002) (citing United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).
A reviewing court must take into account the totality of circumstances, giving deference to the inferences and deductions of a trained police officer that “might well elude an untrained person.” Id.; Morgan, 2009-2352, p. 4, 59 So.3d at 406. The officer’s past experience, training, and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1232. Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under Louisiana Code of Criminal Procedure article 215.1. Id., 99-0091, p. 7, 733 So.2d at 1232. Additionally, in evaluating the totality of the circumstances, an individual’s nervous, evasive behavior is also a pertinent factor in determining whether an officer had reasonable suspicion. Morgan, 2009-2352, p. 5, 59 So.3d at 406.
In the present case, D.F.’s argument turns on the reasonableness of the Terry stop. More specifically, the question is whether or not Officer Pichón had sufficient articulable facts to form the reasonable suspicion necessary to justify a | astop of D.F. We find that Officer Pi-chon’s testimony stated sufficient facts to justify the stop.
Officer Pichón specifically stated that, based on his experience with prior firearm arrests, D.F.’s furtive gesture — grabbing at his waist — was consistent with someone attempting to conceal a firearm in his waistband. We recognize that D.F.’s grabbing at his waistband alone may not be sufficient to justify the stop. However, *1197 Officer Pichón also testified that D.F. made several furtive movements. D.F. quickly moved his hand away from his waistband when he noticed that Officer Pichón was watching him. D.F. also avoided walking in front of Officer Pichón by splitting from the group of people he was with in order to walk on the opposite side of the police car. D.F. further began whispering to the other individuals when he noticed that he was being watched. When viewed together, all of D.F.’s actions demonstrate sufficient articulable facts from which Officer Pichón could form reasonable suspicion to conduct an investigative stop.
Adding to the totality of circumstances to be considered is the fact that the incident took place during a Mardi Gras parade where there was a large amount of pedestrian foot traffic present. As a public safety issue, firearms are banned from parade routes. As presented through his testimony, Officer Pichón felt that D.F.’s actions were consistent with an individual carrying a firearm in his waistband. Considering that there was a potentially illegally armed juvenile on a parade route with a large amount of foot traffic, Officer Pichón, armed with the aforementioned ar-ticulable facts, clearly had information sufficient to form reasonable suspicion under the circumstances. Accordingly, there is no merit to this assignment of error.

\ ^CONCLUSION

Viewing the totality of the circumstances surrounding the investigatory stop of D.F. which led to the seizure of the evidence, the trial court did not err in denying the motion to suppress. The judgment of the juvenile court is affirmed.
AFFIRMED

. State v. Crosby, 338 So.2d 584 (La.1976).